IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAUNDRA RIVERS & TONI NORRIS, INDIVIDUALLY AND BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : CIVIL ACTION : : NO. 22-1476 : |
| v. | : : |
| AMERICAN CENTURY LIFE INSURANCE COMPANY, | : : |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                         **April 12, 2023**

Defendant American Century Life Insurance Company moves to dismiss the Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack of subject matter and/or personal jurisdiction and pursuant to Rule 12(b)(3) for lack of venue. Previously, this Court stayed these proceedings for sixty days to enable the taking of jurisdictional discovery. That period has now expired and the parties have supplemented the record and updated their briefs. Because the Court finds both jurisdiction and venue to be lacking, the motion shall be granted.

**BACKGROUND**

The Plaintiffs, Saundra Rivers and Toni Norris, are beneficiaries of life insurance policies issued by the Defendant American Century Life Insurance Company ("ACLIC"), whose claims for benefits after the deaths of their insured family members were denied on the grounds that misrepresentations were made in the insurance applications. Compl. ¶¶ 17, 28, ECF No. 1. Saunders is a resident of Texas and Norris is a Michigan resident. Compl. ¶¶ 5, 6. ACLIC is a Texas corporation with its principal place of business in Allen, TX. *Id.* ¶ 7. It allegedly "engages

1

in continuous and substantial business throughout the United States, including in Pennsylvania."

*Id.* Plaintiffs allege that ACLIC's life insurance policies:

> restrict it to rescinding a policy for incorrect application answers within two (2) years of the application date or six (6) months from the date of any reinstatement ('contestable period')" and "explicitly state that they are entirely 'incontestable' after having been in force for a period of two (2) years from the application date, or six (6) months from the date of any reinstatement.

*Id.* ¶¶ 37, 38. The complaint also avers that most of ACLIC's life insurance policies are worth less than $20,000, its application process is nominal and requires only completion of a simple health questionnaire without need for a physical examination or medical records review, and ACLIC "relies on post-claim underwriting to challenge policies after the insured passes away." *Id.* ¶¶ 33-36.

Norris and Saunders were the named beneficiaries of ACLIC life insurance policies which were issued four and five years respectively before the deaths of their named insureds.[1] *Id.* ¶¶ 13, 24. In both cases, the insureds had regularly and promptly paid the premiums on their policies. *Id.* Despite the clear language regarding the incontestability period, upon receipt of both claims following the deaths of their insureds, ACLIC refused to pay the benefits due to Saunders and Norris because the original policy applications purportedly contained "material misrepresentations." *Id.* ¶¶ 17, 28. Alleging that ACLIC has a systemic policy of denying valid and incontestable claims, Saunders and Norris initiated this action on April 15, 2022 by filing a class action complaint on behalf of themselves and "all others similarly situated." The complaint raises state law claims for breach of contract (Count I), violation of the Unfair Trade Practices and

---

[1] Saunders was the beneficiary of her mother, Sadie Wiley's ACLIC policy in the amount of $6,000. Compl. Ex. 1-3. Norris was the named beneficiary on the ACLIC policy issued on the life of Cornelius Crosby in the amount of $25,000. Compl. Ex. 1-8.

Consumer Protection Law (Count II), unjust enrichment (Count III), bad faith (Count IV), and declaratory judgment (Count V).

As noted, ACLIC moves to dismiss this action under Rules 12(b)(1) and 12(b)(2) for lack of subject matter and/or personal jurisdiction and pursuant to Rule 12(b)(3) for lack of venue. Because the Court found the Plaintiffs had alleged sufficient facts concerning ACLIC's conduct to suggest the possible existence of the requisite contacts between it and this forum and that the amount in controversy could be satisfied, leave to conduct jurisdictional discovery was given. ECF No. 9. The time for taking discovery has since closed and this matter is now ripe for adjudication of ACLIC's motion.

**LEGAL STANDARDS**

The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) (CAFA) "gives federal courts subject matter jurisdiction over 'class actions' if the suit meets certain requirements such as involving an amount in controversy over $5 million in the aggregate and involving at least one plaintiff who is a resident of a jurisdiction different than that of at least one defendant." *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2)(A)). Federal courts have a duty to examine their subject matter jurisdiction at all stages of litigation even if the parties fail to raise the issue themselves. *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388-389 (3d Cir. 2002). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). But a district court can only grant a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of the claim if it "is wholly insubstantial and frivolous" or "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction." *Id*. at 1408-1409 (internal citation omitted). In

3

this manner, the threshold to withstand a motion to dismiss under Rule 12(b)(1) is lower than that required to withstand a Rule 12(b)(6) motion. *Id.* at 1409.

When a defendant challenges a court's exercise of personal jurisdiction over it under Rule 12(b)(2), the plaintiff again bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). Generally, "a federal district court may assert personal jurisdiction over a non-resident of the state where the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n.*, 819 F.2d 434, 436 (3d Cir. 1987). The Pennsylvania long-arm statute, 42 PA. CONS. STAT. § 5322(b), authorizes the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution." *O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 316 (3d Cir. 2007). Thus, the Court first "must ask whether, under the Due Process Clause, the defendant 'has certain minimum contacts with Pennsylvania such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction exists in two forms: general (or all-purpose) jurisdiction and specific (or case-linked) jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction arises where it can be shown that the cause of action sued upon arose out of the defendant's activities in the forum state. *Provident Nat'l*, 819 F.2d at 437. But where the defendant has "continuous and systematic" contacts with the forum state, general jurisdiction is exercised. *Id.* As its name implies, general jurisdiction extends "to any and all claims brought against a defendant" who is "at home" in a state. *Ford Motor Co. v. Mont. Eighth*

*Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021).[2] "Those claims need not relate to the forum state or the defendant's activity there" but "may concern events and conduct anywhere in the world." *Id.* For specific jurisdiction to attach, the contacts must be the defendant's own choice and the result of its "purposeful availment" of the "privilege of conducting its activities" in the forum state – "not random, isolated or fortuitous." *Id.* at 1025 (quoting, *inter alia, Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In other words, "there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Bristol Myers Squibb v. Co. v. Superior Court*, 582 U.S. 255, 262 (2017)). There are thus three elements which must coalesce to find specific jurisdiction: (1) the defendant purposefully directed its activities at the forum; (2) the plaintiff's claims arose out of relate to at least one of those specifically directed activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Arpaio v. Dupre*, 527 F. App'x 108, 112 (3d Cir. May 20, 2013) (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008).

**DISCUSSION**

The Plaintiffs argue that because ACLIC advertised and "reached out to this great Commonwealth to make money and grow its business," it is subject to this Court's jurisdiction. Pl.'s Suppl. Mem. Law Opp. Def.'s Mot. Dismiss, 1, ECF No. 15. Indeed, the record developed by the parties here shows ACLIC was granted a Certificate of Authority by the Pennsylvania Department of Insurance to transact business in "Life and Annuities" pursuant to 40 P.S. § 382(a)(1) on September 1, 2021. Def.'s Suppl. Br. Supp. Mot. Dismiss Compl., Ex.1(A). ECF No.

---

[2] A corporation will be deemed to be "at home" in states where it is incorporated and where it has its principal place of business. *Ford Motor Co.*, 141 S. Ct. at 1024 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

14.  ACLIC "does not have any office locations in the Commonwealth of Pennsylvania and it does not employ any persons in the Commonwealth of Pennsylvania." Suppl. Decl. Raz Silberman, Ex.1 to Def's Suppl. Br. Supp. Mot. Dismiss Pl's Compl., ¶ 3.  ECF No. 14.  Because the policies were issued to the Plaintiffs' decedents on July 7, 2015 and March 3, 2017 in Texas, and the named insureds died in Texas and Michigan, respectively, on May 2, 2020 and June 18, 2021, ACLIC was not authorized and was not doing business in Pennsylvania on either the dates of issuance or the dates of death.  *Id.* ¶¶ 5-10, 12.  Neither Rivers nor Norris resided in Pennsylvania when they filed their claims and ACLIC sent its correspondence denying the claims and its subsequent written communications to Texas and Michigan where they resided and continue to reside.  *Id.* at ¶ 11.  Notwithstanding that its Pennsylvania Certificate of Authority permits the transaction of Life and Annuity business, ACLIC has never sought authority to or sold any life insurance policies in the Commonwealth of Pennsylvania.  *Id.* at ¶¶ 14-16.  In fact, ACLIC discontinued its life insurance business altogether and has not sold any life insurance policies anywhere since the fourth quarter of 2018, more than two years before receiving its Certificate of Authority to conduct business in Pennsylvania.  It now sells only annuity products in Pennsylvania and elsewhere.  *Id.* ¶¶ 17-18.  None of this evidence supports a finding that the necessary contacts between ACLIC and this forum exist to permit the constitutional exercise of specific or general personal jurisdiction over it by this Court.

However, ACLIC does have a website on which it advertises that its fixed annuities are available for sale in Pennsylvania, among some eighteen other states and the District of Columbia.  Pl.'s Suppl. Mem. Law Opp. Def.'s Mot. Dismiss Ex. B, ECF No. 15.  The website makes it possible for an interested consumer to print/download annuity applications or to submit an application directly to ACLIC online.  *Id.* Ex. C.  Saunders and Norris argue this demonstrates that

ACLIC has maintained a "digital storefront" in Pennsylvania, "purposefully availed itself to this market," "sold products in PA," and "intentionally targeted PA consumers." Pl.'s Suppl. Mem. Law Opp. Def's Mot. Dismiss 11, ECF No. 15.

"Ascertaining specific personal jurisdiction in claims arising from Internet commerce requires courts to determine whether a defendant established minimum contacts through cyberspace." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014) (internal citation omitted). When considering a defendant's internet presence, the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world. *PrimePay, LLC v. Prime Trust, LLC*, 559 F. Supp. 3d 394, 400 (E.D. Pa. 2021). Rather, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity within the forum state by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other, related contacts." *Id*. (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)).

In analyzing such evidence, the Courts typically utilize a "sliding scale" approach whereby at one end of the spectrum are situations where a defendant enters contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet and personal jurisdiction is proper. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). At the opposite end are situations where a defendant has simply posted information on an internet website which is accessible to users in foreign jurisdictions, *i.e.*, where the website is "passive" and does little more than make information available to interested persons resulting in insufficient grounds for the exercise of personal jurisdiction. *Id*; *see also Toys "R" Us,* 318 F.3d at 452 (noting the opinion in *Zippo* has become a seminal authority regarding personal jurisdiction

based upon operation of an internet website). "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer," in which cases the exercise of jurisdiction "is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

Although Plaintiffs contend ACLIC "has conceded it sells insurance products in PA," and this action "is related to Defendant's sale of insurance products, which it currently does in PA," the scant evidence which they provide does not support these contentions. Pl.'s Suppl. Mem. Law Opp. Def.'s Mot. Dismiss 12, ECF No. 15. As reflected in Exhibit A to Plaintiffs' Supplemental Memorandum of Law, ACLIC has sold only annuities in Pennsylvania in the total amount of $128,158.[3] No evidence has been produced showing that any Pennsylvania customers have ever used the ACLIC website to apply for or purchase anything from ACLIC, or that ACLIC has ever actually utilized the website to interact with any Pennsylvania residents. Again, "determining whether specific jurisdiction exists requires three steps: (1) the defendant must have purposefully directed his activities to the forum; (2) the plaintiff's claim must arise out of or relate to at least one of those specific activities; and (3) the assertion of jurisdiction must otherwise comport with fair play and substantial justice." *Arpaio*, 527 F. App'x at 112. Saunders and Norris have failed to demonstrate their claims arise out of or relate to a specific forum-related activity on the part of ACLIC and thus cannot make the showing necessary to satisfy this three-step test. Hence, the

---

[3] Exhibit A is the "Annual Statement for the Year 2021 of the American Century Life Insurance Company Schedule T – Premiums and Annuity Considerations allocated by States and Territories" and is the only such document provided by the Plaintiffs. There is no information regarding whether or how many life insurance policies or annuities may have been sold in Pennsylvania in 2022, and there is no evidence whatsoever to refute ACLIC's that it discontinued its life insurance business altogether in 2018.

Court cannot find it possesses specific jurisdiction to act in this case and the motion to dismiss pursuant to Rule 12(b)(2) shall be granted.

Moreover, even had there been sufficient evidence of the necessary contacts, the record does not support a finding that the amount in controversy has been met. Attached to Silberman's declaration as Exhibit B and to Plaintiffs' opposition brief as Exhibit E is a summary of the face values of the thirty-six life insurance policies on which claims for benefits were denied because of misrepresented facts in the applications. The total on those claims is $365,000, excluding the premiums returned and accepted by the claimants. *Id*. at ¶ 23. This is far below the $5 million threshold required for the exercise of subject matter jurisdiction under CAFA. 28 U.S.C. § 1332(d)(2)(A). Accordingly, ACLIC's motion to dismiss pursuant to Rule 12(b)(1) must also be granted.[4]

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez

Juan R. Sánchez,    C.J.

---

[4] ACLIC additionally challenges the propriety of venue in this matter pursuant to Rule 12(b)(3). Insofar as personal jurisdiction is lacking and there is no other foundation for venue, venue also does not lie in this district and the motion to dismiss on this ground is likewise granted. *See* 28 U.S.C. § 1391(b).